## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN DOE # 1 and JANE DOE # 2<br>JOHN DOE & JANE DOE (3 THROUGH 100) | : | Case No. |
| | : | |
| Plaintiffs, | : | **CIVIL COMPLAINT AND JURY DEMAND** |
| vs. | : | |
| | : | |
| THE COLLEGE BOARD | : | |
| Defendant | : | |

Plaintiff (s) bring this action on behalf of self / themselves, and/or their children. Plaintiffs are Egyptian Nationals who took the SAT exam on May 4, 2019, in advance of their college admission application process, against defendant, The College Board, a New York corporation.

Plaintiff (s) allege as follows, based on personal knowledge, and upon information and belief as to all other matters:

### THE PARTIES

a. Plaintiff John Doe (#1), on behalf of his minor child (a high school student who took the SAT exam on May 4, 2019), is a New Jersey resident, and citizen of USA.

b. Plaintiff Jane Doe (#2), is a high school student who took the SAT exam on May 4, 2019, in Cairo, Egypt, is a Citizen of USA (of Egyptian origin).

c. Plaintiff (s) John Doe & Jane Doe (# 3 through 100), are high school students who took the SAT exam on May 4, 2019 in Egypt, and other Middle Eastern countries. They are citizens of Egypt, but residents of various Middle Eastern countries.

d. Defendant, the College Board, is a non-profit corporation organized and existing under the

1

laws of the State of New York, with its headquarters located in New York, New York. The College Board owns and administers the international SAT test.

## JURISDICTION AND VENUE

a) This complaint is before this Court on diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a), and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

b) Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this district, the defendant has caused harm to Plaintiffs out of their headquarters. Defendant is a resident of this district under 28 U.S.C. 1391(c)(2) because they are subject to personal jurisdiction in this district.

## FACTS COMMON TO ALL COUNTS

1.      Most colleges in the United States, and increasingly in certain countries around the world, require college bound students to take a standardized admission exam. The SAT, owned and administered by the College Board, is a college entrance exam relied upon by public and private colleges in their admission process, and by foreign governmental authorities when accepting students into colleges. It is also critical when making decisions on educational scholarships and grants. The SAT is comprised of:

a) Reading Test multiple-choice questions; b) Writing and Language Test multiple- choice questions; c) Math Test multiple-choice questions and grid-ins; and d) an optional essay.

The standardized admission tests offer colleges and universities a fair and impartial way to compare students' academic readiness. Accordingly, the test taker's score is an important benchmark to measure performance on the test relative to other students.

2.      In the country of Egypt, the Ministry of Higher Education, which is the administrative body regulating and organizing admission to public and private universities, has adopted

the SAT exam as the ONLY standardized test students can take (for those who are enrolled in the American diploma educational programs), and submit as part of their college admission application. Around 15,000 Egyptian students take this exam every year.  Their achieved scores are issued by the College Board, and then reported to the Ministry of Higher Education. Those students are enrolled in High school programs that teaches "US-developed" curriculums and award an American High School Diploma. They are required to study and take the SAT exam, as it becomes the only measure of academic achievement when applying for (Domestic and International universities, including US-based universities).

3.    For a foreign student, who did not attend US-based school, the process of studying, preparing, and sitting for the SAT exam, is a 3-year journey. They go through significant expense, time, and mental preparation, that it is only compensated when they receive that score certificate and use it to apply for the college/major of their dream. Due to the significance of the SAT scores on a student's college admission and future, students and families spend significant amounts of money, and time to prepare for, and take the exam.

4.   In order to take the SAT, those international students register online, via the College Board website, where the Board's instructions specifically state that the student must register – a parent or counselor cannot register on a student's behalf. In connection with the registration process, the College Board provides an online link to the Student Registration Booklet with information about the registration process, important registration information, and test day requirements.

5.   Students who register online must click to accept the SAT Terms and Conditions, which include provisions from the Student Registration Booklet, before finishing the registration process. Pursuant to the SAT Terms and Conditions, the College Board acknowledges its

obligation to provide every student taking the exam with a "fair and equitable opportunity to demonstrate college readiness" in connection with its Test Security and Fairness policies that are also "designed to prevent anyone from gaining an unfair advantage on SAT tests"

6.  The College Board administers the SAT exam in Egypt and various Middle Eastern countries at centers that are managed, and supervised by its employees, contractors, and exam proctors. The students are expected to follow the instructions conveyed to them when registering, and while taking the test itself. These testing centers are presumably monitored by cameras, attended by proctors, and fall completely under the College Board's control. The College Board claims to be committed to SAT test security, and therefore employs test security and fairness policies to guarantee fair, and equitable opportunity for each test-taker.

7.  The international SAT exam was administered on May 4, 2019, and Plaintiffs took it as their final chance to perfect their score in advance of the 2019 college admission applying process (starts July 2019). Most of those students have been preparing for this exam for well over a year (most have already taken earlier trails of the test). They had studied hard, prepared and took the exam without incident. They were all waiting for the score notification to come from the College Board via email (normally comes in about a month after the administration of the test).

8.  Instead of receiving the May 2019 test score, like most other test-takers did, Plaintiffs started receiving a standard email notification (a) from the College Board which read as follows;



9.   Hundreds of Egyptian SAT test-takers have received this message from the College Board, which in effect tells them that the May SAT test score would be cancelled. As seen in the

above standard message, no reason is given, or any factual basis cited for such a decision. The College Board did not mention, or furnish, any incident report, explanation, or a valid claim of what exactly happened. No process was afforded to any student to either understand, or to seek any level of review of such decision. The plaintiffs' three years of hard-work, preparation, multiple exams and trials, were simply wiped-out by a simple email message from the College Board. No remedial measures were offered, and the College Board did not even burden itself to offer any explanation to those students & families. Those who were able to contact the College Board from abroad, were given no explanation or any reason behind the decision.

On the other hand, upon information and belief, thousands of other test-takers, who took the same test (in Egypt and other Middle Eastern countries), in the same circumstances, have received their scores normally, without any delay or issues. Calling into question the standards or measures used by defendant to target Plaintiffs for delay and/or score cancellation.

10. The College Board, in its email message is citing "violations", but as to what are these violations? or who exactly committed them? no specifics. No factual basis, or incidents to tie the individual test-taker to any specific wrong-doing.

11. The College Board, in its SAT TERMS and CONDITIONS*, is detailing a review process for cases where it suspects "invalid scores" and the Board clearly informing test-takers as follows;

"Before canceling scores under this Invalid Scores section, we notify the test taker in writing (via email if possible) about our concerns, let the test taker submit information addressing them, and consider any information submitted. If substantial evidence still exists that the scores aren't valid, we offer the test taker options that may include voluntary score cancellation, a free retest under

---

*https://collegereadiness.collegeboard.org/pdf/sat-terms-and-conditions.pdf

closely monitored conditions, or arbitration in accordance with ETS's standard Arbitration Agreement. When notifying the test taker, we send a copy of the booklet Why and How Educational Testing Service Questions Test Scores, which explains this process in greater detail. (Any test taker may request a copy of this booklet at any time.) Notification of the concern may be made via email if an email address is available".

The college Board failed to follow its own written and published policy, by cancelling Plaintiffs' scores without offering plaintiffs none of the above.

12. The students and families, left with nobody to talk to, or help them in this crisis, have found each other's voice via social media, and discovered that these massive, unprecedented score cancellations have affected large number of students that are of Egyptian origin. Students that graduated High school and were taking the May,4 2019 exam as their final and (most countable) SAT exam trials toward their college admission application. The test-takers were classified into three categories, who took the test in similar circumstances;

a) Students whom scores were issued by the College Board.
b) Students whom scores were cancelled and received the above message from the College Board (typical content).
c) Students whom scores were pending (some remain pending until the date of this action)

13. Upon information and believe, hundreds of Egyptian students, who took the May 2019 exam, and live in at least 6 different Middle East countries (Egypt, Saudi Arabia, Kuwait, Qatar, Dubai, Abu Dhabi), have received the above message.

14. After initial investigation by the undersigned, it was not clear to me what is the connection between all those students who are geographically and physically apart? The only common factor was their National origin. How and Why the College Board decided to withhold their SAT scores in the same transaction? was not understood. The same ambiguous message went out to all of them around the same time.

15. Much of the last month was consumed by those stunned students and families trying to figure out How and Why the scores were withheld and/or delayed? They've received no answers from the College Board. One month has now passed, the College Board never addressed this

crisis in a public statement, press release, or in any detailed communication to those students & families. It is believed that the number of students whom the college Board either delayed or withheld their scores is over 500 students. Students that are applying for Colleges this summer and, in urgent need for the SAT scores they've worked hard for.

16. Upon information and belief, all the test centers, classrooms, where the exam is administered, and all the testing materials had been under the complete supervision and management of defendants, affiliates, employees, contractors, proctors, and security personnel.

17. The following are facts related to this contract, and the defendant's actions;

- Plaintiffs were never cited, reported, or written up, in connection with any exam violations, by defendants or any of its personnel.

- The defendant had a duty to act in good faith and to deal fairly with the plaintiffs in the performance of the contract.

- The duty to act in good faith and to deal fairly with the plaintiffs in the performance of the contract was a material aspect of the contract.

- The plaintiffs relied upon the fact that the defendant would act in good faith and deal fairly with them in the performance of the contract.

- The plaintiffs complied with the terms and conditions of the contract.

- The contract contains an "invalid score" provision which allows the plaintiff to request a review when score is deemed invalid.

- The "invalid Score" clause was a material provision in the contract.

- The "invalid score" clause was never performed by defendant.

- The defendant had a duty under the contract, in good faith, to offer plaintiffs a score review, and receive a copy of the evidences of the mentioned violations.

- The defendant has a duty to offer plaintiffs a review process of its cancellation/delay decision, in good faith and on competent evidence, and this is a material aspect of the contract.

8

- The plaintiffs relied upon the fact that the defendant would base its score review and/or score decisions on competent evidence.

- The defendant, in bad faith, based its score review and/or score cancellation on an unknown fact, and hidden evidences.

- The defendant knew, because it had administered the SAT exam in Egypt for years, that the May 4, 2019 SAT exam could be very detrimental to student test-takers, because of the college admission deadlines.

- The defendant had a duty under the contract to release the scores in a timely manner.

- The plaintiff relied upon the fact that the defendant would act in good faith and deal fairly with him in the performance of the contract.

- The plaintiffs complied with the terms and conditions of the contract.

- The defendant, in bad faith, refused to release plaintiffs scores, and failed to mention any specific reason for the delay and / or cancellation of the test score.

- The defendant, an international college testing institute, was aware that the time for applying to colleges and universities will begin as of June 2019, and that plaintiffs will be is urgent need to receive their SAT test scores, to use it in their college admission application.

- The defendant's notification of the plaintiffs score cancellation was made around the same time as the college and universities admission process starts.

- The defendant's email, in bad faith and fraudulently, failed to identify any violations or present any evidence upon which the defendant relied in deciding to cancel or delay the May 4, 2019 scores.

- The defendant's failure to identify all the evidences in its email to cancel the May 4, 2019 scores represents an unconscionable business practice.

- The defendant's failure to list in its email message, the violations referred to, was in bad faith, and represents an unconscionable business practice.

9

18. The defendant never offered any "appeal" or "review" option to Plaintiffs, as indicated in the terms and conditions, to establish the validity, and to remove doubts as to the answers of Plaintiffs. Defendant, in bad faith, failed to reference any of the reasons it relied upon in making its decision to cancel the plaintiff's scores.

19. The plaintiffs would have requested all the evidences upon which the defendant was relying on delay/cancellation of scores to refute or further explain.

20. The defendant' actions prevented the plaintiffs from explaining their position or challenge the evidences (if any). This was in bad faith and represents an unconscionable business practice.

21 Due to the egregiously and intolerably vague email notification by the defendant, of its score cancellation, the plaintiffs were prevented from confronting defendant on its claims against them.

22 Defendant, in bad faith, is implying that plaintiffs are "cheating", and is making a grave decision that would affect their lives, and cause them (and their families) significant economic losses, severe emotional distress, without identifying any violations, or tying them to any wrongdoings.

23. Plaintiffs waiting for the defendant's decision on the SAT May 4, 2019 test, limited their chances for early application to colleges and universities, wasted their summer, prevented most from seeking summer employment and/or internships.

24. The defendant had a duty to fairly and objectively evaluate the plaintiff's scores, offering plaintiffs a review process "appeal", and an opportunity to examine any evidences that were used against them

25. The duty to fairly and objectively evaluate the plaintiff's answers and to inform plaintiff of any suspected violations, prior to cancelling plaintiffs' scores was a material aspect of the contract.

26. The plaintiffs relied upon the fact that defendant would objectively and fairly correct their answers, and issue the scores, without any bias, prejudice, or preconceived notion(s).

27. The defendant's email message to plaintiffs, in bad faith, failed to reference any evidences, define any violation of policy & procedures, upon which the defendant relied, in deciding to cancel the plaintiffs' scores. This was in bad faith and represents an unconscionable business practice.

28. By sending this standard email message, the defendants, in bad faith, decided to cancel the plaintiffs' May 4, 2019 scores, without offering them any level of review or an opportunity to be heard.

## CAUSES OF ACTION

## FIRST COUNT-TORT

1) The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to all Counts" section;

2) The defendant owed the plaintiffs a duty to conduct all aspects of its May,4 2019 test in a reasonable and prudent manner, including releasing the score.

3) Defendant has a duty to secure its testing materials, centers, personnel, and failure to secure same is makes defendant liable.

4) The defendant breached that duty by negligently and grossly negligently conducting its score issuing process.

5) As a direct result of the defendant's negligence and gross negligence, the plaintiffs were caused to suffer emotional distress.

6)      As a direct result of the defendant's negligence, the plaintiffs were also caused to suffer economic loss as more fully described above.

WHEREFORE, Plaintiffs demand entry of judgment against defendants for compensatory damages, economic damages, punitive damages, interest, costs of suit and any other relief deemed just and appropriate by the Court.

## SECOND COUNT- BREACH OF CONTRACT

1)      The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to All Counts", and the First Count.

2)      The defendant had a duty under the contract to include a reasonable review process, by which the defendant would be able to answer any questions defendant may have against their performance.

3)      The defendant had a duty under the contract to commence its score review based on competent evidence.

4)      The defendant had a duty under the contract to complete grading and issuing the May 4, 2019 test score.

5)      The defendant had a duty to fairly and objectively evaluate the plaintiff's May 4, 2019 test performance and issue a test score.

6)      The defendant had a duty under the contract to provide the plaintiffs with all the evidences upon which it based its score cancellation in its email so that the plaintiff could request a review, explain their position and challenge the evidences.

7)      Defendant breached its duties under the contract signed with each plaintiff by deciding to delay/cancel the plaintiffs' May 4, 2019 scores without competent evidence;

8) The breaches of the contract by the defendant denied the plaintiffs the rights and benefits of the contract and caused the plaintiffs to sustain economic loss as more fully described above.

WHEREFORE, Plaintiffs demand entry of judgment against defendant for compensatory damages, economic damages, interest, costs of suit, and any other relief deemed just and appropriate by the Court.

## THIRD COUNT- BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

1) The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to All Counts" and the First and Second Counts.

2) The defendant had a duty under the contract to release the May 4, 2019 SAT test score to Plaintiffs within a reasonable time.

3) The defendant had a duty under the contract to provide the plaintiff with all the evidence upon which it based its score delay and/or score cancellation.

4) The defendant had a duty under the contract to advise the plaintiffs of the nature of the mentioned violations, if any, and how they relate to each plaintiff.

5) The defendant breached the contract by failing to act in good faith and to deal fairly with the intent to deprive the plaintiffs of rights under the contract by failing to release the May, 4 2019 test scores, or naming a legitimate reason, specific to each plaintiff, behind its decision to delay or cancel the test score, and failing to advise plaintiffs of any available review or appeal process.

6) The breaches of the contract by the defendant denied the plaintiffs the rights and benefits of the contract and caused the plaintiffs to sustain economic loss and mental anguish.

WHEREFORE, Plaintiffs demand entry of judgment against defendant for compensatory damages economic damages, interest, costs of suit, and any other relief deemed just and appropriate by the Court.

## FOURTH COUNT- COMMON LAW FRAUD - CONTRACT

1)      The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to All Counts" and the First, Second, and Third Counts.

2)      The defendant had a duty to include in the contract a reasonable time frame in which the score would be reviewed and released.

3)      The defendant knew that, given the college admission deadlines about which the defendant was aware, student test-takers, including the plaintiffs, would be severely prejudiced by the defendant's egregiously and intolerably delay of score release.

4)      The defendant is still delaying the May 4, 2019 score release for some plaintiffs in egregiously and in intolerably late fashion.

5)      The plaintiffs have suffered economic damages, mental anguish, and distress, as more fully described above.

6)      The defendant knew that, given the college admission deadlines about which the defendant was aware, student test-takers, including the plaintiff, would be severely prejudiced by the defendant's egregiously and intolerably late notification of the defendant's score review and/or score invalidation.

7)      The defendant had a duty to identify all of the evidences it was relying upon in commencing its score review and/or cancellation the plaintiffs' scores in that email message sent to all plaintiffs, and not simply state that "we cancel scores when we determine violations of our test security policies"

8)      The defendant's duty to identify all the evidences, it was relying upon in commencing its score review and/or score invalidation, was a material aspect of the contract.

9)     The plaintiff relied upon the fact that the defendant would identify all the evidences it was relying upon in commencing its score review and/or score invalidation.

10)     The defendant's affirmative delay, and score cancellation was fraudulent, in bad faith and represents an unconscionable business practice.

11)     The defendant's purposeful failure to identify the mentioned violations in its email message to plaintiffs, upon which it relied in commencing its score cancellation, was a material omission.

12)     The plaintiffs would have requested all the evidences relied upon by the defendant in its score review and/or score cancellation and would have confronted defendants on the validity of these evidences/claims.

13)     The defendant purposely failed to advise the plaintiffs, in its email message, that they could request all the documents and evidence relied upon by the defendant in its score delay and cancellation. Defendant misled the plaintiffs about seeking reviews, by not explaining the reasons behind the cancellation, and that other levels of review exist. This was fraudulent, in bad faith, and represents an unconscionable business practice.

14)     The plaintiff would have requested all the evidences relied upon by the defendant in its score review and/or score cancellation and would have made additional and more complete request for review.

15)     All the actions by the defendant were fraudulent.

16)     The plaintiffs suffered economic damages, by the defendant's omissions in the contract, and in its email message of score cancellation.

WHEREFORE, Plaintiffs demand entry of judgment against defendant for compensatory damages, economic damages, interest, costs of suit, punitive damages and any other relief deemed just and appropriate by the Court.

## FIFTH COUNT- BREACH OF CONTRACT

1)      The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to All Counts" and the First, Second, Third, and Fourth Counts.

2)      The defendant had a duty under the contract to commence its score review based on competent evidence.

3)      The defendant had a duty under the contract to provide the plaintiff with all the evidences upon which it based its score review and/or score cancellation.

4)      The defendant had a duty under the contract to advise the plaintiff in its email message that he could request all the documents relied upon by the defendant in its score review and/or score invalidation, but rather closed the door for any talk of review.

5)      The defendant had a duty under the contract to provide adequate time for the plaintiff to take a private re-test. The defendant breached its duties under the contract by Failing to provide adequate time for the plaintiff to take a private re-test.

6)      The breaches of the contract by the defendant denied the plaintiffs the rights and benefits of the contract and caused the plaintiffs to sustain economic loss.

WHEREFORE, Plaintiffs demand entry of judgment against defendant for compensatory damages, economic damages, interest, costs of suit, and any other relief deemed just and appropriate by the Court.

## SIXTH COUNT- BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - CONTRACT

1)      The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to All Counts" Count and the First, Second, Third, Fourth, and Fifth Counts.

2)      The defendant had a duty under the contract to afford Plaintiffs the opportunity of a review of its decision.

3)      The defendant had a duty under the contract to include a reasonable time frame by which the defendant would notify the plaintiff of the possibility of a cancellation decision review.

4)      The defendant had a duty under the contract to commence its score review and or cancellation based on competent evidences.

5)      The defendant had a duty under the contract to share those evidences with Plaintiffs and allow them the opportunity to challenge such evidences.

6)      The defendant had a duty under the contract, to provide the plaintiffs with all the evidences upon which it based its score delay review and/or cancellation, so that the plaintiffs could request appropriate documents, and make a request for decision review/appeal.

7)      The defendant breached the contract by failing to act in good faith and to deal fairly with the intent to deprive the plaintiffs of rights under the contract by failing to offer plaintiffs a clear and fair process for review/appeal.

8)      The breaches of the contract by the defendant denied the plaintiffs the rights and benefits of the contract and caused the plaintiffs to sustain economic loss, severe mental anguish. WHEREFORE, Plaintiffs demand entry of judgment against defendant for compensatory damages, economic damages, interest, costs of suit, and any other relief deemed just and appropriate by the Court.

## SEVENTH COUNT - DUE PROCESS VIOLATION

1.  The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to All Counts" and the First, Second, Third, Fourth, Fifth, and Sixth Counts.

2.  The College Board is member-led, not-for-profit organization chartered in the State of New York. More than 6,000 public and private two, and four-year colleges, universities, secondary schools and districts, higher education systems, and other nonprofit organizations

compose the College Board. According to New York State, Charter of the College Board, the purposes for which the corporation is formed are:

> "To take over, carry on and continue the affairs, property, obligations, contracts, and activities of the unincorporated association known as the College Entrance Examination Board and to pursue the general objectives of that association, to wit, to serve educational organizations in connection with the transition of students from secondary schools to colleges and other institutions of higher learning and in the coordination of secondary school and higher educational activities relating to the identification and evaluation of student capacities, the admission of students and their educational guidance"

3. The New York State Commissioner of Education is designated as the representative of the Corporation upon whom process in any action or proceeding against it may be served.

4. The College Board is funded, in part, via Federal grants, in conducting its normal business operation, and in sponsoring programs and scholarships.

5. Furthermore, the College Board, in performing its duties under the contract, is partnering with various governmental bodies around the world to administer the SAT test for their benefit. In Egypt, defendant is partnering with the Ministry of Education, and Ministry of Higher Education. Defendant is becoming a quasi-governmental authority itself and should be treated as a "State actor". Defendant is depriving plaintiffs of their personal property without a Due process.

6. The College Board has made a serious determination, and cancelled plaintiffs SAT scores. It never afforded Plaintiffs a hearing or, any level of review. Plaintiffs were not given any opportunity to know the facts, or to offer any defenses. This is a violation Plaintiffs "Due Process" rights, under the United States Constitution.

7. The College Board, and its officials were unjustified in their actions, and that an actual injury had occurred to Plaintiffs.

WHEREFORE, Plaintiffs demand entry of judgment against defendant for compensatory damages economic damages, interest, costs of suit, and any other relief deemed just and appropriate by the Court.

### EIGHTH COUNT- BREACH OF FIDUCIARY DUTY

The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to All Counts" and the First, Second, Third, and Fourth, Fifth, Sixth, and Seventh Counts.

1. A fiduciary relationship between Plaintiffs and Defendants exists.

Defendants agreed to offer and administer a fair and equitable SAT exam for the benefit of Plaintiffs and were thereby granted a high degree of control and discretionary power to do so, evidencing a high level of trust and confidence in and reliance on Defendant to perform its duties.

2. Defendant breached their fiduciary duty by failing to release and/or delay Plaintiffs' scores, and as a proximate result of Defendant's breach, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs demand entry of judgment against defendant for compensatory damages economic damages, interest, costs of suit, and any other relief deemed just and appropriate by the Court.

### NINTH COUNT
### INVALID ARBITRATION AGREEMENT

1. The plaintiffs repeat and reallege all facts and allegations contained in the "Facts Common to All Counts" and the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth counts.

2. Defendant is tying its contract with each plaintiff to an arbitration agreement, to which each test applicant "signs off" to be able to schedule for the test. Upon information and belief, plaintiffs never understood that by signing the contract, they were deprived of their right to petition the court to request judicial review.

3. Most plaintiffs in this action, who took the international SAT test, were at the age of (15 & 16 &17) year-old when they registered. They are specifically asked (by defendant), not

to allow anyone (parent or counselor) to register for the exam on their behalf. The minor would have no idea what rights were being replaced by this self-protecting arbitration agreement, forced on them as part of the exam registration process. This agreement could not be considered a valid contract between a sophisticated international testing agency, and a foreign, unaccompanied minor.

4. The arbitration agreement, if exists, doesn't meet the standards for a legally binding contract. For any contract to be legal, both parties must enter the agreement willingly, and fully understanding what they are doing. According to *Clare v. ACT (NJ-SOM/L-1067-18),* the court held that " the preeminence of the ACT and SAT in the college admissions world means that students don't truly choose to take the test", and held also that "There is nowhere else for a student to turn beyond these two testing services," the ruling says. "This is a form of de facto economic compulsion." The ruling goes on to state that minors cannot enter legally binding agreements without their parents or guardians. In our case, defendant is specifically asking students not to allow anyone else to register for their exam (including parent & school counselor)

5. The arbitration agreement, forced on minor test-takers, as part of their exam registration application, is unconscionable, signed under some form of duress, and Lacks a Mutual Assent. The arbitration agreement is against the public policy of protecting the interest of individual test-takers who are minors.

WHEREFORE, Plaintiffs demand entry of declaratory judgment against defendant invalidating the arbitration agreement, and awarding any compensatory damages, economic damages, interest, costs of suit, and any other relief deemed just and appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, request that the Court enter judgment against the College Board, which includes:

1. Declaratory judgement that the arbitration agreement in the SAT test contract, between defendant and each plaintiff, is INVALID.

2. Order the College Board to release the May 4, 2019 SAT scores to each plaintiff.

3. Enjoin defendant, the College Board, from ever retaliating against any of the plaintiffs, by cancelling previous SAT scores, or restricting access to any future tests administered by defendant.

4. Awards to Plaintiffs compensatory, actual and other damages, including interest thereon, in an amount to be proven at trial;

5. Awards attorneys' fees and costs, as allowed by law;

6. Awards pre-judgment and post-judgment interest, as provided by law; and

7. Awards such other relief as the Court deems appropriate.

## DESIGNATION OF TRIAL COUNSEL

Yasser Helal, Esq., is hereby designated trial counsel for the plaintiffs.

## JURY DEMAND

**PLEASE TAKE NOTICE** that plaintiffs demand that the issues herein be tried by a jury.

HELAL LAW FIRM, P.C.
Attorneys for Plaintiff (s)
476 BAT RIDGE AVE #2
BROOKLYN, NY 11220
TEL:(917) 402-6008
FIRM2000@YAHOO.COM

By: _____
Yasser Helal, Esq. (NY4058384)

DATED:  July 9, 2019