**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| JOHN DOE #1, JANE DOE #2, JOHN and JANE DOE #3 THROUGH #50, |
| Plaintiffs, |
| v. |
| THE COLLEGE BOARD, |
| Defendant. |

Case No. 19 Civ. 6660 (LGS)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STAY LITIGATION PENDING ARBITRATION PURSUANT TO 9 U.S.C. § 3**

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................2

    A.    The Parties ...............................................................................................2

    B.    The SAT and the Registration Process ....................................................3

    C.    Plaintiffs' May 2019 SAT Scores ...........................................................4

    D.    This Lawsuit.............................................................................................5

ARGUMENT .....................................................................................................................6

I.      THE PARTIES FORMED AN AGREEMENT TO ARBITRATE......................................7

II.    THE PARTIES DELEGATED THRESHOLD QUESTIONS OF ARBITRABILITY TO THE ARBITRATOR..........................................................................................................8

III.   THERE IS NO BASIS FOR PLAINTIFFS TO RESIST ARBITRATION ..........................9

    A.    This Dispute Is Covered by the Arbitration Agreement .........................9

    B.    The Arbitration Agreement Is Not Unconscionable ..............................11

    C.    Plaintiffs' Youth Does Not Render The Arbitration Agreement Unenforceable ..13

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........................................................................................................6

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017)............................................................................6

*Arshad v. Transp. Sys., Inc.*,
183 F. Supp. 3d 442 (S.D.N.Y. 2016).........................................................................6, 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).....................................................................................................13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)...................................................................................................6, 8

*Bloom v. ACT, Inc.*,
No. 2:18-cv-06749-GW (C.D. Cal. Dec. 4, 2018), ECF No. 86.........................12, 13

*Brown Bros. Elec. Contractors v. Beam Const. Corp.*,
41 N.Y.2d 397 (N.Y. 1977) .......................................................................................7, 8

*Clare v. ACT, Inc.*,
No. SOM-L-001067-18, 2019 WL 272756 (N.J. Super. Jan. 14, 2019)............12, 13

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)........................................................................................7, 8

*Douglass v. Pflueger Hawaii, Inc.*,
135 P.3d 129 (Haw. 2006) ...........................................................................................14

*Durrett v. ACT, Inc.*,
310 P.3d 1047 (Haw. Ct. App. 2011) ...........................................................................13

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012)..........................................................................15

*Farin v. Sercarz*,
39 N.Y.S.2d 482 (N.Y. Sup. Ct. 1942) ...................................................................13, 14

*Fensterstock v. Educ. Fin. Partners*,
2012 WL 3930647 (S.D.N.Y. Aug. 30, 2012) ............................................................12

*Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*,
    518 F. App'x 20 (2d Cir. 2013) ......................................................................8

*Harden v. Am. Airlines*,
    178 F.R.D. 583 (M.D. Ala. 1998) .................................................................15

*Hatemi v. M & T Bank*,
    633 F. App'x 47 (2d Cir. 2016) ....................................................................12

*Homa v. Am. Express Co.*,
    494 F. App'x 191 (3d Cir. 2012) ..................................................................13

*Isaacs v. OCE Bus. Servs., Inc.*,
    968 F. Supp. 2d 564 (S.D.N.Y. 2013) ...........................................................12

*JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*,
    167 F. App'x 266 (2d Cir. 2006) ....................................................................8

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) ...........................................................................6

*Lismore v. Societe Generale Energy Corp.*,
    2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012) ................................................7

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983) ...........................................................................................6

*Muhammad v. Cty. Bank of Rehoboth Beach*,
    189 N.J. 1 (N.J. 2006) ..................................................................................13

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) ...........................................................12

*Pincaro v. Glassdoor, Inc.*,
    2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) ...............................................12

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ..........................................................................................6

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ...........................................................11

*Serrano v. Cablevision Sys. Corp.*,
    863 F. Supp. 2d 157 (E.D.N.Y. 2012) ...........................................................11

*Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*,
    957 F. Supp. 150 (N.D. Ill. 1997) .............................................................14, 15

*Stony Brook Marine Transp. Corp. v. Wilton*,
    1996 WL 913180 (E.D.N.Y. May 1, 1996) ...........................................................................14

*Victorio v. Sammy's Fishbox Realty Co., LLC*,
    2015 WL 2152703 (S.D.N.Y. May 6, 2015) ..........................................................................11

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 3 ................................................................................ *passim*

New Jersey's Plain Language Act ............................................................................................13

**Other Authorities**

5 Williston on Contracts § 9:14 (4th ed. 2007)......................................................................14

## INTRODUCTION

This case is about test takers who sat for the May 2019 SAT in Egypt and other Middle Eastern countries, and whose scores were cancelled by the College Board based on evidence of misconduct or other impropriety.  In particular, the College Board found that the test takers' correct and incorrect answer choices matched other test takers' answer sheets or confiscated answer keys to an extent that was statistically all but impossible without wrongful coordinated action.  The College Board met with plaintiffs' counsel and laid out the evidence for him. Nevertheless, plaintiffs filed this lawsuit several weeks later and sought a temporary restraining order and preliminary injunction.  The Court denied emergency relief, finding that there were "substantial problems" with plaintiffs' likelihood of success on the merits.  July 18, 2019 TRO Transcript (Tr.) 21:15-16, ECF No. 12.  Plaintiffs' "only viable claim," the Court found, was for breach of contract, but the operative contract "foreclose[s] the claim here."  Tr. 20:24-21:2.  The Court identified another substantial barrier for plaintiffs: an arbitration agreement that is "very likely" to be "enforceable."  Tr. 21:19-20.

The College Board now moves to enforce the arbitration agreement.  When plaintiffs registered for the May 2019 SAT exam, they agreed to the SAT Terms and Conditions.  Those Terms and Conditions include a provision mandating that any disputes "that relate in any way to registering for or taking the SAT" shall be resolved by binding arbitration.  The parties' written arbitration agreement is clear and enforceable, it should be enforced pursuant to its terms, and the case should be stayed under the Federal Arbitration Act, 9 U.S.C. § 3.

Although the Complaint acknowledges the arbitration agreement, it nevertheless includes a freestanding count claiming that the agreement is unconscionable.  As a threshold matter, any challenge to the arbitrability of this dispute belongs with the arbitrator and not this Court:  The Terms and Conditions for the SAT explicitly delegate such questions to the arbitrator by

incorporating the Consumer Rules of the American Arbitration Association; under binding Second Circuit precedent, doing so reflects the requisite "clear and unmistakable" delegation of gateway questions.  In any event, plaintiffs' challenges to the arbitrability of this dispute are meritless.  There is nothing unconscionable about the arbitration agreement, the terms of which are clear, fair, and mutual.  And plaintiffs cannot disclaim the arbitration agreement because of their youth (or any other reason) while simultaneously seeking to enforce other aspects of the Terms and Conditions through their contract claims.

The motion to stay these proceedings in favor of arbitration should be granted.

## BACKGROUND

### A.    The Parties

The College Board is a nonprofit organization that owns and administers the SAT.  *See* Compl. at 1-2, 17, ECF No. 2.[1]  Plaintiff "John Doe #1" is a U.S.-citizen parent filing on behalf of his high-school child who sat for the May 4, 2019 SAT—the Complaint does not specify where.  *Id.* at 1.  Plaintiff "Jane Doe #2" is a U.S.-citizen high-school student who sat for the May 4, 2019 SAT administration in Cairo, Egypt.  *Id.*  Plaintiffs "John and Jane Doe #3 through #100" are Egyptian citizens who sat for the May 4, 2019 SAT administration in Egypt and other Middle Eastern countries.  *See id.* at 1.  The Complaint does not include particularized allegations with respect to any plaintiff; it instead defines the group of pseudonymous plaintiffs as those who "receiv[ed] a standard email notification … 'cancell[ing test] scores [on the basis

---

[1] Due to errors in the Complaint's paragraph numbering, citations are to the Complaint's page number.

of] a violation of our test security policies,'" Compl. 4-5 (quoting email), and to whom "[n]o remedial measures were offered" for the cancellation, *id.* at 6.[2]

**B.     The SAT and the Registration Process**

The SAT is a standardized educational test used by postsecondary institutions in making admissions decisions.  *See* Compl. at 2.  The test is a "fair and impartial way to compare students' academic readiness."  Pls. TRO Mem. at 6.  The SAT is administered around the world, including in Egypt and throughout the Middle East.  Compl. at 4.

The Complaint alleges that each plaintiff entered into an arbitration agreement with the College Board through the test registration process.  *See, e.g.*, Compl. at 3 (Test takers "must click to accept the SAT Terms and Conditions, which include provisions from the Student Registration Booklet, before finishing the registration process."); *id.* at 19 ("[E]ach test applicant 'signs off' [on the arbitration agreement] to be able to schedule for the test"); *id.* ("[A]rbitration agreement [is] forced on minor test-takers, as part of their exam registration application").  That is because the plaintiffs all registered for the test online pursuant to terms that included the arbitration agreement or registered using a paper form apprising them that updated Terms and Conditions might apply.

As of May 2018, the SAT Terms and Conditions available online contained an arbitration provision:

> Other than disputes involving an "Invalid Scores" review (discussed in the "Invalid Scores" section) or infringement of the College Board's intellectual property rights, all disputes against the College Board and/or any or all of its contractors, that relate in any way to registering for or taking the SAT, including but not limited to requesting or receiving test accommodations, score reporting, and the use of test taker data, shall exclusively be resolved by a single arbitrator

---

[2] The Complaint is brought on behalf of John Doe #1, Jane Doe #2, and John & Jane Does #3 through 100. Compl. 1.  Plaintiffs' counsel has provided only partial identifying information for approximately no more than 50 of these 100 purported plaintiffs.  For purposes of this motion, the College Board accepts as true the allegations in the Complaint concerning the arbitration provision and the nature of the dispute.

through binding, individual arbitration administered by the American Arbitration Association ("AAA"), under the AAA Consumer Arbitration Rules in effect at the time a request for arbitration is filed with the AAA.  Copies of the AAA Rules can be located at www.adr.org.  Unless the parties mutually agree otherwise, the seat and the place of the arbitration shall be New York, New York.  The parties agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. governs this provision, and it is the intent of the parties that the FAA shall pre-empt all State laws to the fullest extent permitted by law.  No arbitration may be maintained as a class action, and the arbitrator shall not have the authority to combine or aggregate the disputes of more than one individual, conduct any class proceeding, make any class award, or make an award to any person or entity not a party to the arbitration, without the express written consent of the College Board.

ECF No. 8-1 at 2 (hereinafter "T&C").  The arbitration provision also includes a waiver of plaintiffs' "right to have [their] dispute heard by a judge or jury," and a provision that the parties shall bear their own costs.  T&C at 2.

### C.   Plaintiffs' May 2019 SAT Scores

Following each SAT administration, the College Board analyzes all testing data to identify possible violations of its test-security procedures, aberrant scoring patterns, and other indicia of potential misconduct or score invalidity.  In running this analysis for the May 2019 SAT, the College Board identified a cluster of geographically proximate test takers, including plaintiffs, with statistically unlikely overlapping answer patterns.  The College Board investigated further and found troubling evidence of potential misconduct, including: (1) remarkable answer similarities with groups of other test takers; (2) regional patterns of such matching answers; (3) incidents of test misconduct in the Middle East in connection with this administration; (4) prior misconduct among some of the test takers; and (5) perfect or near-perfect matches with correct and incorrect answers on confiscated answer keys.

In view of this, College Board test security personnel made recommendations to senior College Board administrators about how to treat the scores of each individual test taker. Consistent with the SAT Terms and Conditions, which allow the College Board to cancel scores

in misconduct cases, T&C at 11, senior administrators made final decisions, based on overwhelming and irrefutable evidence of misconduct, to cancel certain test takers' scores.  The Complaint is explicitly brought on behalf of those test takers, who were notified by email that their scores were being "cancelled" because the College Board had "determined a violation of our test security policies."  Compl. at 5 (quoting email).

### D.    This Lawsuit

Notwithstanding their agreement to arbitrate "all disputes … that relate in any way to registering for or taking the SAT, including … score reporting," T&C at 2, and despite the bar on aggregating disputes of more than one individual, on July 17, 2019, plaintiffs filed this lawsuit in federal court on behalf of 100 test takers asserting nine causes of action.  Plaintiffs also sought a temporary restraining order and preliminary injunction to compel the College Board to release SAT scores it had determined to cancel.

At an emergency hearing held the next day, the Court denied the TRO and preliminary injunction.  The Court found that there were "substantial problems" with plaintiffs' likelihood of success on the merits.  Tr. 21:15-16.  In assessing the likelihood of success on a fiduciary duty or due process claim, the Court noted that there is "no special relationship between the College Board and [test-takers]," Tr. 14:19-20, and that there is no "basis to find that the defendant is a State actor for purposes of a due process violation," Tr. 20:15-16.  Rather, the "only viable claim" is one for breach of contract, but the operative agreement likely "foreclose[s] the claim here."  Tr. 20:24-21:2.  That is because the parties' agreement "reserves for [the College Board] the right to cancel scores" in its "sole discretion."  Tr. 21:5-13.  The Court also identified an arbitration agreement that is "very likely" to be "enforceable."  Tr. 21:19-20.

## ARGUMENT

The Federal Arbitration Act (FAA) requires that, "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *accord Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("The plain language [of the statute] specifies that the court 'shall' stay proceedings pending arbitration[.]").  The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *Arshad v. Transp. Sys., Inc.*, 183 F. Supp. 3d 442, 446 (S.D.N.Y. 2016) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011)).  This federal policy mandates that courts "rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); "any doubts concerning the scope of arbitrable issues [must] be resolved in favor of arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24-25 (1983).

Typically, "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  However, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and "the FAA operates on this additional arbitration agreement just as it does on any other."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010).  Such delegation is enforced, "so long as [it] is clear and unmistakable." *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 470 (S.D.N.Y. 2017).

Where, as here, the parties' agreement explicitly incorporates the "American Arbitration Association Rules," which empower an arbitrator to decide questions of arbitrability, this incorporation "serves as clear and unmistakable evidence of the parties' intent to delegate such

issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

This Court's inquiry is therefore limited to determining whether the parties formed an agreement

to arbitrate.  Because they did, the Court should stay this entire action pending arbitration.

## I.     The Parties Formed An Agreement To Arbitrate

The Complaint alleges that each plaintiff agreed to arbitration terms as part of the test

registration process.  *See, e.g.*, Compl. at 3 (Test takers "must click to accept the SAT Terms and

Conditions, which include provisions from the Student Registration Booklet, before finishing the

registration process."); *id*. at 19 ("[E]ach test applicant 'signs off' [on the arbitration agreement]

to be able to schedule for the test"); *id.* ("[A]rbitration agreement [is] forced on minor test-takers,

as part of their exam registration application").[3]  The arbitration agreement, written in plain

language, makes binding arbitration the exclusive forum for "all disputes against the College

Board and/or any or all of its contractors, that relate in any way to registering for or taking the

SAT."  T&C at 2.[4]

Notwithstanding plaintiffs' consent to the SAT Terms and Conditions, plaintiffs assert

that they "never understood that by signing the contract, they were deprived of their right to

petition the court to request judicial review."  Compl. at 19.  But it is elementary contract law

that "the existence of a binding contract is not dependent on [] subjective intent."  *Brown Bros.*

*Elec. Contractors v. Beam Const. Corp.*, 41 N.Y.2d 397, 399 (N.Y. 1977).  In determining

---

[3] Plaintiffs either registered for the test online pursuant to terms that included the arbitration agreement or by using a paper form apprising them that updated Terms and Conditions might apply.  As of May 2018, the SAT Terms and Conditions available online included the arbitration provision.

[4] Courts routinely accept a complaint's allegations as proof of an arbitration agreement.  *See, e.g.*, *Lismore v. Societe Generale Energy Corp.*, 2012 WL 3577833, at *1-3 (S.D.N.Y. Aug. 17, 2012) (finding that an arbitration agreement existed between the parties based on "the allegations in the Complaint and exhibits attached thereto by [p]laintiff," and rejecting plaintiff's "artful but ultimately unsuccessful" attempt to "escape his obligation to arbitrate").  To the extent plaintiffs contest the existence of the arbitration agreement, Defendant respectfully reserves the right to provide evidence on reply.

whether plaintiffs consented to arbitration, the focus is the "objective manifestations of the intent

of the parties as gathered by their expressed words and deeds." *Id.* Here, those expressed words

and deeds—namely, the process of registering for the SAT—reflect plaintiffs' agreement to be

bound by the SAT Terms and Conditions, including the agreement to arbitrate claims.

## II.    The Parties Delegated Threshold Questions Of Arbitrability To The Arbitrator

Any challenge plaintiffs wish to mount to the interpretation, enforceability, or existence

of the arbitration provision—or whether it covers this dispute—is for the arbitrator, not this

Court, to decide. To be sure, typically "the question of whether the parties agreed to arbitrate is

to be decided by the court, not the arbitrator." *AT&T Techs*., 475 U.S. at 649. Questions of

arbitrability may be delegated to the arbitrator, however, "if there is clear and unmistakable

evidence from the arbitration agreement." *Contec Corp.*, 398 F.3d at 208.

Where, as here, the parties' agreement explicitly incorporated the "American Arbitration

Association rules," which empower an arbitrator to decide questions of arbitrability, such

incorporation "clearly and unmistakably indicate[s] the parties' intent to delegate the issue of

arbitrability to an arbitrator." *Arshad*, 183 F. Supp. 3d at 447 (citing *Contec Corp.*, 398 F.3d at

208); *see also Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 518 F. App'x 20,

21 (2d Cir. 2013) ("[B]y incorporating the [AAA] rules the parties agreed to have the arbitrators

decide arbitrability[.]"); *JSC Surgutneftegaz v. President & Fellows of Harvard Coll*., 167 F.

App'x 266, 268 (2d Cir. 2006) ("The intent of the parties to commit the question of arbitrability

to the arbitrator is further demonstrated by the incorporation of the rules of the American

Arbitration Association ('AAA') that empower the arbitrator to determine issues of

arbitrability.").[5]  As a result, the arbitration agreement here represents "clear and unmistakable evidence" that the question of arbitrability is reserved for the arbitrator.

## III.    There Is No Basis For Plaintiffs To Resist Arbitration

The parties entered into a written arbitration agreement that clearly and unmistakably delegates questions about enforceability and arbitrability to the arbitrator.  Any challenges plaintiffs may mount to the arbitration agreement should accordingly be referred to the arbitrator. Nonetheless, in the interest of completeness, we address here the arguments plaintiffs have previewed (in their Complaint and in discussions between counsel) for resisting arbitration: that this dispute falls outside the scope of the arbitration agreement, that the agreement "is unconscionable," and that it is "against the public policy of protecting the interest of individual test takers who are minors."  *See* Compl. at 20.

### A.    This Dispute Is Covered by the Arbitration Agreement

In discussions between counsel, plaintiffs' counsel has indicated his intention to argue that the arbitration provision does not cover this dispute.  That is incorrect.  The arbitration agreement applies, with two exceptions, to "*all* disputes against the College Board and/or any or all of its contractors, that relate *in any way* to registering for or taking the SAT, including but not limited to requesting or receiving test accommodations, [and] score reporting[.]"  T&C at 2 (emphasis added).  This dispute plainly falls within the arbitration agreement for at least two reasons:  First, plaintiffs' lawsuit arises from their discontent with the May 2019 SAT, which plainly relates to "taking the SAT."  Second and more specifically, plaintiffs complain that their

---

[5] Specifically, the AAA Consumer Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" as well as "the power to determine the existence or validity of a contract of which an arbitration clause forms a part."  Rule 14, AAA Consumer Rules (2016), http://adr.org/sites/default/files/Consumer%20Rules.pdf.

scores for the May 2019 SAT have not been released, and thus this litigation also relates to "score reporting."

Plaintiffs seek to invoke the exception to the arbitration provision for "Invalid Scores." [6] But the Complaint and the Terms and Conditions make clear that the "Invalid Scores" exception does not apply. A section of the Terms and Conditions—"Grounds for Score Cancellation"— lays out in detail the circumstances under which the College Board may cancel a test taker's scores, including for various forms of misconduct. T&C at 11. Such misconduct constitutes a violation of the College Board's test security policies and will result in outright cancellation of a test taker's scores. T&C at 3-4 ("Violation of policies related to test security can result in denial of entry to or immediate dismissal from the test center, cancellation of your scores, or a limited or permanent ban from future test taking."). The crux of this case is that each of the plaintiffs was notified by the College Board that it had "determined a violation of our test security policy" in his or her case, and as a result his or her test scores were being "cancelled." Compl. at 5. The dispute on which the Complaint turns thus is plainly subject to arbitration.

A separate section of the Terms and Conditions lays out a special review process for "Invalid Scores." Where the College Board determines that evidence of possible invalidity may be susceptible to explanation by the test taker, the College Board will "notify the test taker in writing (via email if possible) about our concerns, let the test taker submit information addressing them, and consider any information submitted." T&C at 11-12 (Invalid Scores). That provision has no application here, however. Again, the whole point of this suit is that test takers' scores were canceled with no opportunity to respond to the evidence against them. *E.g.*, Compl. at 5 ("The College Board did not mention, or furnish, any incident report, explanation, or

---

[6] The other exception is for disputes concerning "infringement of the College Board's intellectual property rights." T&C at 2. That is not relevant here.

a valid claim of what exactly happened.  No process was afforded to any student to either understand, or to seek any level of review of such decision."); Compl. at 10 ("The defendant never offered any 'appeal' or 'review' option to Plaintiffs").  Either a plaintiff's scores were canceled for misconduct—in which case the arbitration provision applies—or through the Invalid Scores review process—in which case the allegations in the Complaint do not apply.[7]  In short, there is no way for a plaintiff to press the claims set out in the Complaint outside of arbitration.[8]

### B.    The Arbitration Agreement Is Not Unconscionable

Plaintiffs attack the arbitration agreement as unconscionable, even as they seek to retain the benefits of the contract.  Whether as a matter of procedure or substance, such an argument is unsupported by the caselaw and the facts of this case.

First, the agreement is not procedurally unconscionable.  Plaintiffs cannot argue that the College Board employed "high-pressured tactics" in order to deprive them of a "meaningful choice."  *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 WL 2152703, at *12 (S.D.N.Y. May 6, 2015) (citing *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003)).  Test takers are given more than a "sufficient opportunity to read" the arbitration agreement, which they are directed to read in the online registration form and through registration for the SAT by mail.  *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 164 (E.D.N.Y. 2012).  Moreover, the arbitration clause was "neither buried nor hidden," appearing as it does on the second page of the Terms and Conditions.  *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d

---

[7] Importantly, the Terms and Conditions reserve to the College Board the exclusive right to determine which procedures (cancellation for misconduct or Invalid Scores review) apply.  T&C at 12.

[8] No test taker who was subject to the Invalid Scores review process is properly part of this case:  The entire Complaint is premised on the allegation that test takers' scores were canceled and that they were denied any process for review, which definitionally excludes students who were subject to the Invalid Scores process set out in the Terms and Conditions.  Even if that provision were implicated here, however, all of plaintiffs' claims are subject to arbitration because they seek compensatory and economic damages—far beyond the relief that might be available to a test taker through the Invalid Scores review process.  T&C at 11-12.  Furthermore, if there is any question on this point, not only is it for the arbitrator to decide, *Contec Corp.*, 398 F.3d at 208, but the arbitrator must decide it by resolving any ambiguity in favor of arbitration, *see supra* at 6.

711, 732 (E.D.N.Y. 2017) (citation and quotation marks omitted).  And while test takers must

agree to the SAT Terms and Conditions, including its arbitration provision, in order to take the

test, adhesion contracts are not per se unconscionable.  *See, e.g.*, *Nayal v. HIP Network Servs.*

*IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) ("[E]ven if the Agreement was a form

contract offered on a 'take-it-or-leave-it' basis and [the other party] refused to negotiate the

Arbitration Provision, this is not sufficient under New York law to render the provision

procedurally unconscionable."); *see also* Tr. 17:7-9 ("THE COURT:  … [T]he Supreme Court

has basically decided that arbitration agreements that are contracts of adhesion are

enforceable.").

Second, nothing about the arbitration terms is "grossly unreasonable," establishing

substantive unconscionability.  *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569

(S.D.N.Y. 2013).  Under the terms of the parties' agreement, the duty to arbitrate is mutual, and

arbitration will be conducted before the AAA under its Consumer Rules, which courts recognize

as a suitable alternative to a judicial forum.  *See, e.g.*, *Hatemi v. M & T Bank*, 633 F. App'x 47,

49 (2d Cir. 2016) (vacating lower court's denial of motion to compel arbitration under the AAA

Consumer Rules); *Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317, at *1, *7-8 (S.D.N.Y. Sept.

12, 2017) (enforcing arbitration under AAA Consumer Rules); *Fensterstock v. Educ. Fin.*

*Partners*, 2012 WL 3930647, at *7 (S.D.N.Y. Aug. 30, 2012) (rejecting argument that AAA-

managed arbitration was substantively unconscionable under California law).

To argue that the arbitration agreement "doesn't meet the standards for a legally binding

contract," Compl. at 20, plaintiffs rely on an unpublished New Jersey trial court decision *Clare v.*

*ACT, Inc*., No. SOM-L-001067-18, 2019 WL 272756, at *1 (N.J. Super. Jan. 14, 2019).  Not

only is *Clare* a non-binding outlier, *Bloom v. ACT, Inc.*, No. 2:18-cv-06749-GW (C.D. Cal. Dec.

4, 2018), ECF No. 86 (enforcing ACT arbitration agreement); *Durrett v. ACT, Inc.*, 310 P.3d

1047 (Haw. Ct. App. 2011) (same), it has no persuasive value.  The decision relies on a state law

unconscionability framework that predates *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333

(2011) and is no longer good law.[9]  Indeed, the decision commits the precise legal error

identified in *Concepcion*, invalidating a "contract of adhesion" based on arbitration-specific state

law and highly malleable factors, including "public interest" and "economic compulsion."  *Id.* at

347 (invalidating California's *Discover Bank* rule for contracts of adhesion in part because it was

"toothless and malleable" and had a disproportionate impact against arbitration agreements).

The FAA preempts state doctrine that "derives [its] meaning from the fact that an agreement to

arbitrate is at issue" and which "stand[s] as an obstacle" to arbitration.  *Id.* at 339, 343.[10]

### C.     Plaintiffs' Youth Does Not Render The Arbitration Agreement Unenforceable

Plaintiffs also contend that the arbitration agreements are unenforceable because the test

takers are minors.  But arbitration clauses are routinely enforced against minors, including under

New York law and in the specific context of standardized testing.  *See, e.g.*, *Farin v. Sercarz*, 39

N.Y.S.2d 482, 48 (N.Y. Sup. Ct. 1942) (staying litigation pending arbitration where minor

agreed to arbitrate his claims); *Bloom v. ACT, Inc.*, No. 2:18-cv-06749-GW (C.D. Cal. Dec. 4,

2018), ECF No. 86 (staying litigation pending arbitration where minor student agreed to arbitrate

his claims when he registered for a standardized test, the ACT); *Durrett*, 310 P.3d 1047 (staying

litigation and compelling arbitration where minor student agreed to arbitrate his claims when he

---

[9] *See, e.g.*, *Clare*, 2019 WL 272756, at *1, *5 (relying on *Muhammad v. Cty. Bank of Rehoboth Beach*, 189 N.J. 1 (N.J. 2006)).  The Third Circuit has acknowledged that after *Concepcion*, "*Muhammad* is preempted by the FAA."  *Homa v. Am. Express Co.*, 494 F. App'x 191, 195 (3d Cir. 2012).

[10] Aside from preemption, *Clare* is also distinguishable to the extent that the court considered issues not relevant here, such as that the "[f]ont size in the contract's terms and conditions is 7 point type, considerably smaller than required [by New Jersey's Plain Language Act]."  *Clare*, 2019 WL 272756, at *4.  The SAT Terms and Conditions, by contrast, appear in Times New Roman 12.

registered for a standardized test, the ACT).  Enforcement is especially appropriate where, as here, the minor plaintiffs are near adulthood.  *See, e.g.*, *Douglass v. Pflueger Hawaii, Inc.*, 135 P.3d 129, 138 (Haw. 2006) (because plaintiff was "only one to two years from adulthood[,] capable and competent to contract for gainful employment [he] therefore, should be bound by the terms of such contracts"); *Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150 (N.D. Ill. 1997) (enforcing arbitration clause against minor employee).

More to the point, this is a case in which plaintiffs' only theoretically viable claim against the College Board is for enforcement of the Terms and Conditions—the parties' contract. Having explicitly sought to enforce the terms of that contract, plaintiffs cannot be heard to argue that the arbitration provision (and only the arbitration provision) of that contract is unconscionable and cannot be enforced.  In short, plaintiffs "cannot have it both ways.  They cannot rely on the contract when it works to their advantage, and repudiate it when it works to their disadvantage."  *Stony Brook Marine Transp. Corp. v. Wilton*, 1996 WL 913180, at \*5 (E.D.N.Y. May 1, 1996); *see also Farin*, 39 N.Y.S.2d at 483 (minor may not "retain an advantage from any transaction which he repudiates"); 5 Williston on Contracts § 9:14 (4th ed. 2007) ("If an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions or stipulations.").

Courts routinely apply this principle by requiring minors to honor their contractual obligation to arbitrate.  In *Farin v. Sercarz*, for example, the court rejected the request of a minor plaintiff to void the arbitration clause in an apprenticeship agreement, noting that the court was "unable to conclude that the provision which prescribed the method of adjudicating grievances is so separable from the other terms and provisions of the contract. … So long as the infant stands upon the contract, he must stand upon it in its entirety."  *Farin*, 39 N.Y.S.2d at 484; *see also,*

*e.g.*, *Sheller ex rel. Sheller*, 957 F. Supp. at 154 (minor plaintiffs could not "retain[] the advantage of the contract—employment, which entitled them to bring this suit—while repudiating that very same contract"); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) ("The infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit.  Thus, '[i]f an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions or stipulations.'" (citation omitted)); *cf. Harden v. Am. Airlines*, 178 F.R.D. 583, 587 (M.D. Ala. 1998) (minor plaintiffs bound by forum selection clause despite their youth, where the "[minors] have already sued to recover on the contract," because "[i]f the minor chooses benefits under the contract, he may not avoid his obligations thereunder").

## CONCLUSION

For the foregoing reasons, the Court should stay this action pending arbitration.

Dated: New York, New York
　　　　August 21, 2019

Respectfully submitted,

/s/ *Alan E. Schoenfeld*
Alan E. Schoenfeld
Adam Amir
WILMER CUTLER PICKERING
　HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 937-7294
Fax: (212) 230-8888

Bruce M. Berman
WILMER CUTLER PICKERING
　HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, DC  20006
Tel: (202) 663-6173

*Attorneys for the College Board*