```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
JOHN DOE #1, et al.,                                         :
                                        Plaintiffs,          :
                                                             :         19 Civ. 6660 (LGS)
                    -against-                                :
                                                             :         **OPINION AND ORDER**
THE COLLEGE BOARD,                                           :
                                        Defendant.           :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/2020

LORNA G. SCHOFIELD, District Judge:

Plaintiffs bring this action against Defendant, the College Board, for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, common law fraud, due process and tort-based claims for negligent infliction of emotional distress, in connection with Defendant's cancelation of scores from the May 4, 2019, SAT exam. Plaintiffs also seek a declaratory judgment invalidating the arbitration agreement between the parties. Defendant brings this unopposed motion to compel arbitration and stay the case. For the following reasons, Defendant's motion is granted.

I.    BACKGROUND

   A.   Factual Background

The following facts are taken from the Complaint, Defendant's memoranda of law regarding its motion to compel arbitration and other submissions. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

Defendant is a non-profit corporation organized and existing under the laws of the State of New York. Defendant owns and administers the SAT exam, both domestically and internationally. Plaintiff "John Doe #1" is a U.S. citizen parent filing this action on behalf of his high-school-age child who took the May 4, 2019, SAT exam at an unspecified location. Plaintiff

"Jane Doe #2" is a U.S.-citizen high-school student who sat for the May 4, 2019, SAT exam in Cairo, Egypt.  Plaintiffs "John and Jane Doe #3 through #100" are Egyptian citizens who also sat for the May 4, 2019, SAT exam in Egypt and other Middle Eastern countries.  The Complaint does not make particularized allegations with respect to the age of any Plaintiff, either at the time of exam registration or at the time the action was filed.

The SAT exam is a standardized educational test used by post-secondary institutions around the world in making admissions decisions.  In order to take the SAT exam, students register online via Defendant's website, or by mail using paper forms.  Students must register on their own behalf; a parent or counselor cannot register for them.  During this process, students are provided access to the Student Registration Booklet, which includes information about registration and test day information.  The registration process requires student test takers to agree -- by either signing or "clicking" -- to Terms and Conditions ("the T&C"), which include provisions from the Student Registration Booklet.  The T&C notes Defendant's obligation to provide every student taking the exam with a "fair and equitable opportunity to demonstrate college readiness" in connection with Defendant's exam security and fairness policies that are "designed to prevent anyone from gaining an unfair advantage on SAT tests."

The T&C contains the following arbitration agreement ("the Arbitration Provision"):

> Other than disputes involving an "Invalid Scores" review (discussed in the "Invalid Scores" section) or infringement of the College Board's intellectual property rights, all disputes against the College Board and/or any or all of its contractors, that relate in any way to registering for or taking the SAT, including but not limited to requesting or receiving test accommodations, score reporting, and the use of test taker data, shall exclusively be resolved by a single arbitrator through binding, individual arbitration administered by the American Arbitration Association ("AAA"), under the AAA Consumer Arbitration Rules in effect at the time a request for arbitration is filed with the AAA. Copies of the AAA Rules can be located at www.adr.org. Unless the parties mutually agree otherwise, the seat and the place of the arbitration shall be New York, New York. The parties agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. governs this

> provision, and it is the intent of the parties that the FAA shall pre-empt all State laws to the fullest extent permitted by law. No arbitration may be maintained as a class action, and the arbitrator shall not have the authority to combine or aggregate the disputes of more than one individual, conduct any class proceeding, make any class award, or make an award to any person or entity not a party to the arbitration, without the express written consent of the College Board.

The T&C also contains a section labeled "Grounds For Score Cancelation," which states:

> Defendant reserve[s] the right to dismiss test takers, decline to score any test, and/or cancel any test scores when, in our sole discretion, as applicable, a testing irregularity occurs; there is an apparent discrepancy in the test taker's identification; a test taker is improperly admitted to the test center; a test taker has engaged in misconduct (see Misconduct section below); based on a test taker's testing history the validity of the score is suspect; or the score is deemed invalid for another reason, including, but not limited to, discrepant handwriting, unusual answer patterns, or plagiarism.

The Grounds for Score Cancelation contains subsections identifying specific conduct that may result in score cancelation. These include, "Testing Irregularities" (e.g., cancelation based on irregular circumstances associated with the administration of a test, including evidence of possible advanced knowledge of secure test content); "Misconduct" (e.g., cancelation based on attempting to give or receive assistance, including by copying or through the use of an answer key); "Testing History" (i.e., cancelation based on a particular test taker's testing history); and "Invalid Scores" (e.g., cancelation based on conduct involving unusual answer patterns). Some subsections also contain specific remedies in the event such conduct occurs. For example, unlike all other subsections, the Invalid Scores subsection provides that, before a test taker's scores are canceled, Defendant must "notify the test taker in writing (via email if possible) about our concerns, let the test taker submit information addressing them, and consider any information submitted." However, the Invalid Scores subsection also explains that "[i]f at any time before, during, or after a review of questionable scores we find that *test misconduct* has [also] occurred, we may treat the matter under our misconduct procedures." In this scenario, Defendant is not

obligated to give the test taker the opportunity to submit additional information.  The Invalid Scores subsection also provides that Defendant has "sole discretion in determining whether to treat potential testing violation under this section or the Misconduct section above."  Finally, the Invalid Scores subsection states that when "substantial evidence still exists that scores aren't valid [for conduct classified within the Invalid Scores subsection] . . . the arbitration option is available only for tests administered in the United States and U.S. territories."

After each SAT exam administration, Defendant analyzes all testing data to identify possible violations of its test-security procedures, abnormal scoring patterns and other indicators of potential misconduct or score invalidity, and then determines whether scores should be released, cancelled or subjected to further review.  If Defendant determines that the conduct of certain test takers falls under the Misconduct section, administrators may recommend that their scores be cancelled.  These recommendations are reviewed by senior test administrators and, if recommendations are approved, Defendant then contacts students and informs them that their scores have been canceled or withheld, among other potential outcomes.

Defendant's analysis of testing data for the May 2019 SAT identified indicia of suspect behavior in a geographically proximate cluster of several hundred test takers in the Middle East, including Plaintiffs, with statistically unlikely overlapping answer patterns.  The resulting scores were therefore suspicious and required further investigation.  Defendant found online discussion of misconduct at test sites in Egypt and other sites in the Middle East.  Defendant's observers at test sites, and on-the-ground test administrators, also found (and confiscated) various cheat sheets with answer keys written on the clothing of test takers, their calculator covers and admission tickets.

This initial cluster included approximately several hundred test takers Defendant believed had engaged in some form of test misconduct. Evidence of misconduct included: "(1) remarkable answer similarities with groups of other test takers; (2) regional patterns of such matching answers; (3) incidents of test misconduct in the Middle East in connection with this administration; (4) prior misconduct among some of the test takers; and (5) perfect or near-perfect matches with correct and incorrect answers on confiscated answer keys." According to Defendant, the statistical significance of some of these events occurring -- without inappropriate activity by test takers -- is less than one in one hundred million. Of this cluster, Defendant then determined, based on review of evidence in each case, that the conduct of certain test takers, including Plaintiffs, fell under the Misconduct section, rather than the Invalid Score section, and therefore did not permit Plaintiffs to submit additional information because of the irrefutable evidence of impropriety. According to the terms of the Misconduct section, test administrators recommended that Plaintiffs' scores be cancelled, and then senior test administrators made the final decision, based on the overwhelming and irrefutable evidence of misconduct.

Upon receiving an email notification that their scores had been canceled because Defendant had "determined a violation of [their] test security policies," Plaintiffs filed this action.

    **B.**    **Procedural History**

Plaintiffs also sought in this action a temporary restraining order and preliminary injunction to compel Defendant to release the canceled SAT scores. Following a show cause hearing, the Court denied Plaintiffs' motions and directed Plaintiffs either to consent to arbitration or propose a briefing schedule for Defendant's forthcoming motion to compel arbitration. Plaintiffs declined to consent to arbitration in a letter explaining their rationale.

Defendant filed a motion to compel arbitration.  Despite having their request for an extension granted, Plaintiffs did not file a response.  Plaintiffs did address the issue of arbitration in their above-referenced letter and in the Complaint.  Following an order from the Court inviting the parties to submit further evidence, Defendant filed an affidavit substantiating the factual representations defense counsel made at the July 18, 2019, hearing on Plaintiffs' temporary restraining order, and Plaintiffs filed a response affidavit.

## II.    STANDARD

The Federal Arbitration Act ("FAA") embodies a national policy favoring arbitration based on the desire to preserve the parties' ability to arbitrate, not litigate, their disputes. *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019).  Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015); *accord Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 215 (S.D.N.Y. 2019).  In determining whether an action is arbitrable, a court must consider (1) whether the parties agreed to arbitrate and, if so, (2) whether the scope of the arbitration agreement encompasses the claims at issue.  *Holick*, 802 F.3d at 394; *accord Coscarelli*, 364 F. Supp. 3d at 215.  The threshold question of whether the parties agreed to arbitrate is a matter of contract, determined by state law.  *Holick*, 802 F.3d at 395 n.9; *accord Coscarelli*, 364 F. Supp. 3d at 215.

Proceedings must be stayed once the district court is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Nicosia*, 834 F.3d at 229.  In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment."  *Id*.  Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions,

answers to interrogatories, and admissions on file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Id.*

Under New York law, the general rule is that a party who executes a contract is considered bound by its terms, absent a showing of fraud, duress or similar wrongful act by the other contracting party. *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 701 (S.D.N.Y. 2017); *see Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828-29 (N.Y. 1988). "'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (applying New York law) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *accord Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y. 2017) (applying New York law). Contracts signed by minors are voidable, not void. *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) (applying New York law); *see Scott Eden Mgmt. v. Kavovit*, 563 N.Y.S.2d 1001, 1002 (Sup. Ct. 1990). New York law offers minors the right to disaffirm a contract, not to find that no enforceable contract exists. *See Shields v. Gross*, 448 N.E.2d 108, 110 (N.Y. 1983); *accord I.C. ex rel. Solovsky* at 135 F. Supp. 3d at 208. While a party has an absolute right to disaffirm a contract entered into as a minor "within a reasonable time after becoming of age," *I.C. ex rel. Solovsky* at 135 F. Supp. 3d at 209, after disaffirmance a minor "'is not entitled to retain an advantage from a transaction which he repudiates.'" *Id*. (quoting *Joseph v. Schatzkin*, 181 N.E. 464, 465 (N.Y. 1932)).

Under New York law, an arbitration agreement is invalid if it is unconscionable or was the product of economic duress. *See Tong v. S.A.C. Capital Mgmt., LLC*, 860 N.Y.S.2d 84, 85 (1st Dep't 2008); *accord Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 349 (S.D.N.Y. 2019). A contract is unconscionable when it is "'so grossly unreasonable or unconscionable in the light of

7

the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Molina*, 363 F. Supp. 3d at 349 (quoting *Gillman*, 534 N.E.2d at 828). Unconscionability contains a procedural and substantive component, *see Gillman*, 534 N.E.2d at 828, with the procedural component asking whether a party lacked "meaningful choice" in entering into the contract. *Molina*, 363 F. Supp. 3d at 349. Courts consider factors such as "whether deceptive or high-pressured tactics were used, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power [including age]." *Am. Family Life Assurance Co. of New York v. Baker*, 778 F. App'x 24, 26 (2d Cir. 2019) (summary order) (quoting *Gillman*, 534 N.E.2d at 828). Substantive unconscionability exists where the contractual terms are "grossly unreasonable" and favor the party seeking to enforce the contract. *Mizrahi v. Mizrahi*, 99 N.Y.S.3d 63, 66 (2d Dep't 2019); *accord Molina*, 363 F. Supp. 3d at 349.

## III. DISCUSSION

Plaintiffs do not contest that they had a contractual relationship with Defendant, nor the validity of the T&C as a whole. Rather, the Complaint alleges that only the Arbitration Provision is unconscionable, was signed under some form of duress and lacks mutual assent because Plaintiffs are minors and registered for the SAT exam on their own behalf. Plaintiffs also contend that the conduct at issue related to the May 2019 exam is appropriately considered an Invalid Score dispute, which requires Defendant to give Plaintiffs an opportunity to submit additional information and prohibits arbitration for tests administered outside the United States and U.S. territories. For the following reasons, Plaintiffs' arguments are unpersuasive, and Defendant's motion to compel arbitration is granted.

### A.     Whether the Arbitration Provision is Valid

The Arbitration Provision is valid because Plaintiffs have not established that it is either procedurally or substantively unconscionable.  Plaintiffs' argument about their status as minors during exam registration relates to procedural unconscionability of the Arbitration Provision.  If an arbitration agreement is unconscionable or is the product of economic duress, it is invalid under New York law.  *Molina*, 363 F. Supp. 3d at 349.  Even if there were procedural unconscionability due to Plaintiffs' age, Plaintiffs are not entitled to argue both that Defendant breached the T&C and seek the release of the May 2019 exam scores, while also claiming the Arbitration Provision was unconscionable.  *See Stony Brook Marine Transp. Corp. v. Wilton*, No. 94 Civ. 5880, 1996 WL 913180, at *5 (E.D.N.Y. May 1, 1996) (concluding that plaintiff "cannot rely on the contract when it works to their advantage, and repudiate it when it works to their disadvantage" where plaintiff sued for recovery on an agreement and then disputed its terms in response to defendants' claim that an arbitration agreement governed).  This principle applies to both minors and adults.  *See I.C. ex rel. Solovsky*, 135 F. Supp. 3d at 209 (observing that, under New York law, "[t]he privilege of infancy is to be used as a shield, not as a sword" (quoting *Rice v. Butler*, 55 N.E. 275, 276 (N.Y. 1899))).

Further, other than Plaintiffs' arguments regarding age, Plaintiffs do not offer any facts to suggest that Defendant utilized "high pressured tactics" or put Plaintiffs under duress, *see I.C. ex rel. Solovsky* at 135 F. Supp. 3d at 208 (observing that plaintiff could not claim lack of mutual assent on the sole basis of age), or denied Plaintiffs the opportunity to read and understand the Agreement before signing it.  *See Chung Chang v. Warner Bros. Entm't*, No. 19 Civ. 2091, 2019 WL 5304144, at *3 (S.D.N.Y. Oct. 21, 2019) (applying New York law and rejecting plaintiff's argument that an arbitration agreement was "buried" in a contract, where the provision covered

9

over one full page in an eleven-page document); *Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 391 (S.D.N.Y. 2017) (rejecting the argument that an arbitration agreement was procedurally unconscionable because plaintiffs, who did not read or understand English, did not make reasonable efforts to have the agreement explained to them, as required by New York law).

Similarly, the fact that student test takers were required to agree to the T&C, including the Arbitration Provision, to sit for the SAT exam does not render the contract one of adhesion. *See Velez v. Credit One Bank*, No. 15 Civ. 4752, 2016 WL 324963, at *4-5 (E.D.N.Y. Jan. 25, 2016) (applying New York law and finding that plaintiff had not met her burden to demonstrate the unconscionability of an arbitration agreement in part because she "fail[ed] to show that she lacked a meaningful choice in choosing [d]efendant's credit card services" and where there was no evidence of "high-pressure sales tactics").

With respect to substantive unconscionability, the terms of the Arbitration Provision are not "grossly unreasonable" or "outrageous," as they bind both parties equally to arbitration. *See Suqin Zhu*, 291 F. Supp. 3d at 392 (concluding that the arbitration clause at issue was not substantively unconscionable, in part, because the terms of the agreement applied equally to both parties). That the Arbitration Provision provides that each party is responsible for its own fees and expenses incurred in connection with the arbitration, regardless of outcome, is also insufficient to render it substantively unconscionable. *See Epstein Becker & Green, P.C. v. Brown*, No. 10 Civ. 4784, 2010 WL 3835067, at *3 (S.D.N.Y. Sept. 10, 2010) (applying New York law and concluding that the term in the arbitration agreement that the parties share the costs and expenses of arbitration which was not, on its face, "grossly unreasonable or unconscionable"). The same is true of the class action waiver provision. *See Chatziplis v. PriceWaterhouseCoopers LLP*, No. 17 Civ. 4109, 2018 WL 3323820, at *3 (S.D.N.Y. July 6,

2018) (applying New York law and concluding that the class action waiver provision in the arbitration agreement was not "grossly unreasonable"). Accordingly, the Arbitration Provision is valid.

## B. Whether the Arbitration Provision Applies to the Claims at Issue

The claims at issue are arbitrable because the Invalid Score subsection vests Defendant with discretion to determine which subsection, within the "Grounds for Score Cancelation" section of the T&C, governs. Plaintiffs argue that because the dispute is, broadly speaking, about "invalid" or "canceled" scores, the May 2019 exam conduct falls under the Invalid Score subsection, which provides that arbitration is available only for tests administered in the United States and U.S. territories and allows test takers to submit additional information to rebut evidence of misconduct. However, the "Invalid Score" subsection also allows Defendant "at any time before, during, or after a review of questionable scores" to find that test misconduct has occurred and treat a matter under the Misconduct subsection.

During the post-exam analytics process, Defendant identified a cluster of several hundred geographically proximate test takers, including Plaintiffs, with statistically unlikely overlapping answer patterns. Upon further investigation, Defendant discovered additional evidence of potential misconduct, including: "(1) remarkable answer similarities with groups of other test takers; (2) regional patterns of such matching answers; (3) incidents of test misconduct in the Middle East in connection with this administration; (4) prior misconduct among some of the test takers; and (5) perfect or near-perfect matches with correct and incorrect answers on confiscated answer keys." Upon further review of the evidence, out of the larger cluster, Defendant determined that the conduct of certain test takers, including Plaintiffs, fell under the Misconduct section, rather than the Invalid Score section, based on overwhelming and irrefutable evidence of

11

misconduct.  Defendant's choice to treat Plaintiffs' May 2019 SAT exam conduct under the Misconduct subsection -- which does not permit test takers to submit rebuttal evidence and is subject to the Arbitration Provision -- was within its discretion.  Accordingly, Defendant's motion to compel arbitration is granted.

As Defendant is entitled to compel Plaintiffs to arbitrate this litigation, Defendant's motion to stay the litigation pending arbitration is also granted.  *Nicosia*, 834 F.3d at 229 ("The district court must stay proceedings once it is satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." (internal quotation mark omitted)).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and stay the case is GRANTED.  The Clerk of Court is respectfully directed to close the motion at Docket No. 15.

Dated: February 24, 2020
    New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**